303 So.2d 498 (1974)
Claude J. SCALLAN, Plaintiff-Appellant,
v.
MARK PETROLEUM CORPORATION, Defendant-Appellee.
No. 12435.
Court of Appeal of Louisiana, Second Circuit.
November 7, 1974.
Rehearing Denied, December 10, 1974.
Writ Refused January 31, 1975.
*499 Booth, Lockard, Jack, Pleasant & LeSage by James E. Bolin, Jr., Shreveport, for plaintiff-appellant.
James E. Franklin, Jr., Shreveport, for defendant-appellee.
Before AYRES, PRICE and HALL, JJ.
En Banc. Rehearing Denied, December 10, 1974.
HALL, Judge.
Plaintiff, Claude J. Scallan, sued defendant, Mark Petroleum Corporation, for wages in the amount of $1,150, allegedly earned by plaintiff during October and November, 1970, under a written employment contract. Plaintiff further sought recovery of penalties and attorney's fees under LSA-R.S. 23:631-23:632 and, alternatively, sought recovery under the Fair Labor Standards Act (29 U.S.C. § 201 et seq.). Defendant admitted plaintiff was originally employed under a written contract providing for a salary plus bonus but alleged that the contract was terminated in the early part of October, 1970, that plaintiff's employment thereafter was strictly on a commission basis, and that no commissions were earned by or due to plaintiff for the period of October and November, 1970. From a judgment of the district court rejecting his demands, plaintiff appealed. We reverse the judgment of the district court, award plaintiff the amount of wages sued for and attorney's fees, but deny recovery of penalties.
The defendant corporation was engaged in the oil business and as a part of its business sold interests in oil and gas leases or production. Plaintiff was employed by defendant on a full-time basis to sell such interests, primarily through contacting prospective purchasers by long distance telephone calls. A written employment agreement was executed by plaintiff and defendant on June 23, 1970. The agreement provided that plaintiff was to receive a salary of $600 plus bonus per month. Among its extensive and comprehensive provisions, the agreement contains the following clauses:
"3) The employment shall take effect upon the 23rd day of June, 1970, and shall continue in effect from such date, except that same may be cancelled by either party hereto as of any date by giving prior notice in writing to the other party of the termination of employment. In the event of termination by either party, employee shall not be entitled to receive compensation after the date of such termination and shall have no vested rights. (Emphasis supplied)
"* * *
"10) The parties hereto do further agree that no waiver or modification of this agreement or of any covenant, condition or limitation herein contained shall be valid unless in writing and duly executed by the party to be charged therewith, and that no evidence of any waiver or modification shall be offered or received in evidence in any proceeding between either of the parties hereto arising out of or affecting this agreement, or the rights or obligations of any party hereunder, unless such waiver or modification is in writing, and duly executed as aforesaid." (Emphasis supplied)
It is undisputed that plaintiff worked full-time for defendant from the time the contract was signed until the early part of October, 1970. He received paychecks for his base salary on July 7 and 20, August 5 and 20, September 7 and 22, and October 6. Plaintiff testified he continued to work on a full-time basis under the terms of the written contract during October and until *500 November 24, on which date his employment was terminated by William H. Parker, president of the defendant corporation.
Plaintiff contends he received no pay checks after October 6 and is, therefore, entitled to recover his base salary of $600 per month for October and most of November, or a total of $1,150. Plaintiff testified he continued to work for almost two months without receiving any paychecks because Parker advised him the cash flow was short, sales were down, and he would be paid when things picked up. Plaintiff testified he made verbal demand on Parker for payment of his salary after his termination and the record shows written demand was made on the defendant corporation by letter dated November 30.
Parker testified plaintiff worked on a full-time basis until the early part of October. At that time Parker asked Mrs. Sentell, the office secretary, to pick up plaintiff's materials and ask him to come in his office. Parker testified he advised plaintiff he was terminated because of lack of results, and plaintiff was issued a paycheck with a notation on it to the effect that it was final payment for services rendered and for all purposes. Parker testified plaintiff asked if he could stay on without salary because of prospects he had working and Parker agreed he could do so working strictly on a commission basis. He stayed around for three or four weeks without working materials and without supervision, but was not there beyond the end of October. Finally, Parker suggested he ought to get a job where he could make some money and plaintiff left for good. Parker was surprised when he later received written demand for unpaid wages.
The office secretary testified she was instructed by Parker to pick up plaintiff's materials and ask him to go into Parker's office and that this was earlier than the latter part of November. She stated it was customary in such instances to issue a final paycheck with the notation described by Parker on the check, but could not remember specifically whether this was done in plaintiff's case. She testified plaintiff never thereafter asked for a paycheck because he knew he was not entitled to one, and that all other employees received their regular paychecks during this period. She thought plaintiff worked there a total of two or three months.
The district court found plaintiff failed to carry the burden of proving he worked in excess of the period of time for which he received compensation from the defendant and was unable to establish he worked for the defendant during the months in question. We find these conclusions to be in error, probably because of a misplaced burden of proof.
It is undisputed the parties entered into a written contract of employment and plaintiff worked full-time for defendant under the terms of the contract, at least until October, 1970. Defendant concedes plaintiff continued to be in its office doing some work for at least three or four additional weeks. Parker so testified. It is alleged in defendant's answer that plaintiff was terminated, sought reemployment and at that time a new contractual relationship was entered into between plaintiff and defendant with plaintiff to receive a percentage of all sales made. This allegation necessarily implies a continuing employment beyond the date of the alleged termination in early October.
The burden of proving an alteration in the terms of a written employment agreement lies with the party alleging the change. Griffin v. Cambridge Construction Company, 236 So.2d 539 (La.App. 4th Cir. 1970), writ refused, 256 La. 766, 238 So.2d 748; Lucas v. Morefield, 18 La.App. 497, 137 So. 633 (2d Cir. 1931); Dunbar v. Orleans Metal Bed Co., 145 La. 779, 82 So. 889 (1919). The agreement in this case provides for termination upon notice in writing and further provides that no waiver or modification thereof shall be valid unless in writing and no evidence of any waiver or modification shall be received in *501 any proceeding arising out of the agreement unless in writing. The burden of proving the termination of the agreement, in the manner specified in the agreement, is also on the defendant. The testimony of Parker that the agreement was verbally altered or terminated, supported only in part by the testimony of the office secretary, is insufficient to meet the defendant's burden of proof.
While plaintiff's testimony was positive and definite as to the exact period he worked during October and November, the testimony of Parker and the office secretary in this respect was vague and indefinite. The secretary did not remember when plaintiff was terminated except she thought it was prior to the latter part of November. Parker thought plaintiff worked only about three or four weeks after early October.
The testimony of defendant's witnesses was not supported by any records, although such records were available. All of the corporation's records were in the possession of the Securities Exchange Commission, under subpoena in other proceedings, but correspondence in the record shows the records or copies thereof could have been obtained by defendant. Particularly important would have been the October 6 paycheck with the alleged final payment notation thereon and daily time sheets which were kept on each salesman in the office.
Defendant having failed to carry its burden of proving a modification or termination of the employment agreement in accordance with its terms or the actual date when plaintiff ceased to work for defendant, plaintiff is entitled to recover the salary stipulated in the agreement for the claimed period, being $1,150.
Plaintiff also seeks recovery of penalties and attorney's fees under the provisions of LSA-R.S. 23:631 et seq. It is well-settled that these statutory provisions are coercive or penal in nature, must be strictly construed, should not be extended beyond the plain wording of the statute, and must yield in interpretation and application to equitable defenses. Otwell v. Howard Lumber & Supply Company, Inc., 283 So.2d 826 (La.App. 2d Cir. 1973), writ refused, La., 286 So.2d 364. In Otwell, the court held:
"Thus, where there is a bona fide dispute or question as to whether wages are due, a failure to pay may not properly be classified as an arbitrary refusal to pay under the terms of the statute. Under such circumstances penalties are not properly allowable. * * *"
In the case at bar, while we hold the defendant employer failed to carry its burden or proving a valid termination of the employment agreement and of the employment itself, we also find there was a bona fide dispute as to these issues. The circumstances of this case do not justify the award of penalties in the nature of continuing wages as provided in the first sentence of LSA-R.S. 23:632.
No distinction has been made in the previously decided cases between the provisions for penalties in the nature of continuing wages and the provisions for attorney's fees, the equitable defense doctrine having been applied to both. However, in Porter v. Lombardino, La.App., 303 So.2d 493, also decided this day, it is held that the 1964 amendment to LSA-R.S. 23:632 makes mandatory the awarding of attorney's fees in any case in which unpaid wages are recovered, regardless of equitable defenses. A majority of the panel in the instant case agree with the holding and rationale expressed in Porter. It follows that plaintiff, having been awarded recovery for unpaid wages, is entitled to recover reasonable attorney's fees, which we fix at $500.
Defendant pleads the prescription of one year under LSA-C.C. Art. 3534 which provides:
"The following actions are prescribed by one year:
*502 "* * *
"That of workmen, laborers and servants, for the payment of their wages.
"* * *."
Plaintiff was not a workman, laborer or servant within the meaning of the code article. That article does not apply to one working as a salesman for an oil company, with the title of vice president, on a salary plus bonus basis, under a written contract. See Tillman v. New Orleans Saints Football Club, 265 So.2d 284 (La. App. 4th Cir. 1972). The plea of prescription is overruled.
For the reasons assigned, the judgment of the district court is reversed. It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Claude J. Scallan, and against defendant, Mark Petroleum Corporation, in the sum of $1,150, together with attorney's fees in the sum of $500 which are taxed as costs, and all other costs of this proceeding, including the cost of appeal.
Reversed and rendered.
HALL, J., dissents in part with reasons.
HALL, Judge (dissenting in part).
I respectfully dissent from that part of the majority opinion awarding attorney's fees. The jurisprudence, both before and after the 1964 amendment to LSA-R.S. 23:632, has consistently applied the equitable defense doctrine to both the liability for continuing wages and the liability for attorney's fees provided for in the statute, without distinction. There is no distinction. Both provisions are equally penal in nature. Both provisions are couched in mandatory terms.
I do not agree that the 1964 amendment made any change in the law in this respect or that it legislatively overruled the long line of cases holding the penal provisions of the statute must yield to equitable defenses. The substitution of the words "well-founded suit" for "just suit" and the addition of the words "for any unpaid wages whatsoever" did not have the effect of eliminating the applicability of the equitable defense doctrine. The language of the statute is no more mandatory now than it was before the amendment. The meaning I attribute to the changes in wording is to allow recovery of attorney's fees where an employee recovers less than the full amount of wages sued forbut still yielding to equitable defenses.