LABORDE, Judge.
Petroleum Associates of Lafayette, Inc. (PAL) appeals a district court judgment ordering it to pay its former employee, Chijioke Vincent Agusiegbe (Agusiegbe), $9,571.60 in unpaid wages, penalty wages, and attorney fees. We amend the judgment to award an additional $500.00 in attorney fees and affirm as amended.
Agusiegbe is a Nigerian. He was hired by PAL on October 24, 1983, as a petroleum engineer, at a monthly salary of $2,000.00. At that time, his student visa did not authorize him to work in the United States. He received his first paycheck, for work performed during the last week of October, on or about October 31, 1983. José Flores, President of PAL, testified that Agusiegbe was fired immediately thereafter (November 1) when questions arose relative to his immigration status and consequent employability. Agusiegbe had been hired, said Flores, under the misapprehension that the applicant was an American citizen. According to Agusiegbe, his employment continued through Friday, November 18, and he was terminated, for no apparent reason, on November 21. Agu-siegbe testified that he had made no misrepresentations to PAL concerning his true citizenship.
The next check Agusiegbe received, dated December 2, was in the gross amount of $642.87, representing nine and one-half days pay at $2,000.00 monthly. The check contained language to the effect that cashing it would constitute full settlement of all wage claims against PAL. Dissatisfied with the amount of this second check, Agu-siegbe gave it to his attorney and filed suit against PAL under LSA-R.S. 23:632[1] for three weeks pay at $2,000.00 per month ($1,659.00), penalty wages, and attorney fees.
The main issues we must decide are: 1) whether the district court was clearly wrong in concluding as a factual matter that an employer-employee relationship existed until November 21; and 2) whether the award of penalty wages was improper under the circumstances.
José Flores testified that Agu-siegbe falsely represented himself to be an employable American citizen. Agusiegbe was fired November 1, said Flores, since it had become apparent that he did not have the requisite work visa. Flores did not deny, however, that Agusiegbe continued reporting to the PAL offices through November 21. Flores explained that Agu-siegbe, though terminated, was permitted to remain on as an “observer” pending application for a change in his visa.
*316 Agusiegbe testified that PAL was aware from the outset of his immigration status. He argues that his practice of reporting to work and riding with another employee (in a company car) to make customer calls through November 18, all with PAL’s knowledge, establish that he could not have been terminated, as appellant claims, on November 1.
The important question, on which the district judge properly focused his attention, is whether Agusiegbe worked until the 21st or not. LSA-R.S. 23:631(A) provides in part:
“Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation.”
(Emphasis added). The statute applies to all employees, regardless of their nationality; PAL’s mistaken impression as to Agu-siegbe’s status, assuming a mistake was made, is similarly irrelevant. We find no clear error in the district judge’s conclusion that Agusiegbe worked until November 21 and that he is entitled to three weeks wages at $2,000.00 per month.
Once an employee establishes his right to unpaid wages, LSA-R.S. 23:632 provides for penalization of the employer for the lesser amount of ninety days wages at the employee’s daily rate of pay, which was assessed here, or else for full wages from the time of demand until payment of the wages due. LSA-R.S. 23:631(B) provides: “In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section.” The rule imposing penalty wages thus admits of an exception where a bona fide dispute exists as to the wages due, which exception our courts have recognized. We have recently held that, to support a claim for penalty wages, the employer’s actions must have been motivated through bad faith, or he must be found to have acted in an arbitrary or unreasonable manner given the circumstances. Stated another way, a good faith or nonar-bitrary defense to liability for unpaid wages may excuse the employer from the imposition of penalty wages. Menard v. Roy Young, Inc., 441 So.2d 28 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 122 (La.1984). PAL urges on appeal that the amount of wages due Agusiegbe was subject to dispute, that its conduct under the circumstances cannot be viewed as arbitrary or unreasonable, and that penalty wages should not be imposed.
In our view, forcing an employee to sue for his paycheck is not the kind of “dispute” which the statutory and decisional law contemplate. To escape the imposition of penalty wages, an employer must persuade the fact finder that a good faith dispute exists as to wages due its employee. There is no evidence that any representative of PAL ever bothered to respond to Agusiegbe’s letter demanding his wages. The second paycheck, issued December 2, for nine and one-half days work, was a “compensatory check,” explained the president at trial. On appeal, this check is denominated by appellant as “simply a gratuity.” Whatever this peculiar gesture was meant to accomplish, it was too little, too late. Appellant’s admission that Agu-siegbe was allowed to go on customer calls in a company car up to the day which Agusiegbe recognizes as his day of termination (November 21) compels us to believe either that: 1) PAL engages in very unusual business practices; or 2) the district judge was within the limits of his great discretion as a fact finder in assessing PAL with penalty wages. We find the second choice more proper.
Appellant advances several other arguments which fail to convince us. He argues that the court erred in applying LSA-R.S. 23:631 to an employee hired for twelve months rather than by the day, week, or month. We disagree, for Agusiegbe was paid by the month; he thus falls, in our *317 view, within the square terms of the statute.
Appellant also urges that we reverse because the district court, made a presumption that one of PAL’s employees, who was well placed to impeach or to corroborate Agusiegbe’s claim of having worked for three weeks in November, would have testified adversely to PAL had that employee been called to testify. The precise argument is that, since the burden of proof rests on the plaintiff, no adverse presumption may be drawn from the defendant’s failure to produce a witness. But no authority is cited for the proposition; in fact, there is considerable precedent to the contrary. See, e.g., State, Department of Highways v. Mims, 336 So.2d 24 (La.App. 3rd Cir.), writ denied, 339 So.2d 16 (La.1976); Cangelosi v. McInnis Peterson Chevrolet, Inc., 373 So.2d 1346 (La.App. 1st Cir.1979); and Franklin Printing Company, Inc. v. Scott Fence of New Orleans, Inc., 392 So.2d 170 (La.App. 4th Cir.1980), writ denied, 397 So.2d 805 (La.1981). We find no error in the district judge’s evidentiary ruling.
The terms of LSA-R.S. 23:632 provide for the imposition of reasonable attorney fees in connection with a well-founded suit for any unpaid wages whatsoever. Under the decisional law, attorney fees for additional efforts on appeal are also award-able. Duhon v. Prof Erny’s Music Company, Inc., 328 So.2d 788 (La.App. 3rd Cir.1976). We therefore amend the judgment of the district court to provide for an additional $500.00 in attorney fees, or a total of $10,071.60, and affirm the judgment as amended. Costs of this proceeding, at trial and on appeal, are taxed to appellant.
AMENDED AND AFFIRMED.

. "Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee’s daily rate of pay, or else for full wages from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.”